UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICK T. SENANEFES, | Case No. 4:10CV2157 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION & ORDER** |
| Defendant | |

Nick T. Senanefes ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court REVERSES the decision of the Administrative Law Judge ("ALJ") and AWARDS BENEFITS to Plaintiff from June 7, 2007 through December 17, 2007. The Court further AFFIRMS the ALJ's finding of new and material evidence of medical improvement to lift the bar of res judicata beginning December 18, 2007, but REVERSES the ALJ's decision and REMANDS the decision for reevaluation and further analysis as to Plaintiff's cervical conditions and RFC from December 18, 2007 forward.

**I.    PROCEDURAL HISTORY**

On October 23, 2006, an ALJ made a fully favorable decision granting SSI benefits to Plaintiff based upon a prior application for benefits filed on August 17, 2005. ECF Dkt. #10-3 at 80.[1] The ALJ indicated that he found Plaintiff disabled as of August 17, 2005 due to degenerative disc disease of the cervical and lumbar spine with radiculopathy, anxiety disorder, and alcohol abuse. *Id.* He found that Plaintiff's physical impairments were so severe that Plaintiff was unable to perform any work existing in significant numbers in the national economy. *Id.* The record

---

[1] Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

contains an "ALJ Bench Decision Checksheet" which identified Plaintiff's severe impairments, indicated that the ALJ found that Plaintiff had a RFC for sedentary work and cited to Medical-Vocational Rule 201.14, which directed a finding of disability. *Id*. at 83. The ALJ indicated as his rationale for the decision that:

> Controlling weight is assigned to the opinions of Dr. Aey, as set forth in Exhibit 10F. Her opinion is consistent with her treatment records and not inconsistent with the other evidence of record indicating the existence of radiculopathy due to degenerative disc disease. 20 C.F.R. § 416327(e). Even assuming that Claimant had PRW [past relevant work] as an electrician, the vocational expert indicated that there are no skills transferable to sedentary work.

*Id.*

Subsequent to this favorable decision, Plaintiff was found ineligible for SSI because he had inherited a sum of money upon his father's death and thus did not meet the non-medical criteria for receiving SSI. ECF Dkt. #10-2 at 59, ECF Dkt. #13 at 576. It was determined that Plaintiff's excess resources rendered him ineligible for SSI. *Id*.

After he exhausted the inheritance, Plaintiff reapplied for SSI on June 18, 2007, alleging disability beginning March 1, 2005 due to spinal degenerative disc disease, bone spurs, disc herniations, depression and high blood pressure. ECF Dkt. #10-7 at 199; ECF Dkt. #10-8 at 242. His application was denied initially and on reconsideration. *Id*. at 101-112. On May 23, 2008, Plaintiff requested an administrative hearing. *Id*. at 115.

On July 2, 2009, Plaintiff's counsel sent a written request for the ALJ to issue an on-the-record decision based upon *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). ECF Dkt. #10-6 at 190. Counsel explained that Plaintiff had received a prior favorable ALJ determination as to SSI benefits and no evidence showed medical improvement and actually showed further deterioration.

On July 13, 2009, an ALJ conducted a hearing where Plaintiff was represented by counsel. ECF Dkt. #10-3 at 87. The ALJ heard testimony from Plaintiff and a vocational expert ("VE"). *Id*. The ALJ stated that she was denying Plaintiff's request for an on-the-record decision. *Id*. at 91-92. She acknowledged that the prior ALJ made an oral decision, but indicated that she could find nothing besides his pronouncement of diagnoses. *Id*. She also indicated that one of the diagnoses that the prior ALJ based his decision upon was Plaintiff's alcoholism, and stated that "it's for that

reason, and some others" that she disagreed with Plaintiff's application of *Drummond* to the case and how it applied. *Id*. at 92. She further found once Plaintiff was declared disabled "and he is taken off the rolls for some reason, in this case for excess income that he had, he starts back from square one" as far as she was concerned. *Id.* She thereafter acknowledged that *Drummond* applied, but stated that "it doesn't give me the direction, I don't think clearly enough, that I need to find or agree with every analysis or the analysis that the Judge did make, because he didn't make any, and I think that leaves me with the ability and the responsibility to analyze the case based on the current evidence that's facing me at this time." *Id*. at 92. She also stated:

> I'm still going to argue that I don't believe Drummond should apply in its full, in the full spirit of the decision because there was no analysis of the disability or the disabling conditions. And also, I'm not sure how I'm going to treat the Judge's finding of alcoholism as an element in his decision because he didn't find that it was material or not material, and that's an analysis that we have to make as well when alcohol is a problem, and it was a problem in that case.

*Id*.

On September 22, 2009, the ALJ issued a Notice of Decision - Unfavorable. ECF Dkt. #10-2 at 59-74. On October 13, 2009, Plaintiff requested that the Appeals Council review the ALJ's decision. ECF Dkt. #10-6 at 192. On August 23, 2010, the Appeals Council denied review of the ALJ's decision. ECF Dkt. #10-2 at 50-53.

On September 24, 2010, Plaintiff filed the instant suit. ECF Dkt. #1. On February 10, 2011, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #12. On February 20, 2011, Plaintiff filed his brief on the merits. ECF Dkt. #13. On May 25, 2011, Defendant filed his brief on the merits and on June 6, 2011, Plaintiff filed his reply brief. ECF Dkt. #s 17, 18.

## II. **SUMMARY OF THE ALJ'S DECISION**

In her September 22, 2009 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 7, 2007, the date that he filed his SSI application. ECF Dkt. #10-2 at 62. She found that Plaintiff suffered from the severe impairments of degenerative disc disease, disc herniation of the cervical and lumbar spine, major depressive disorder, anxiety disorder and substance abuse. *Id.* She determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1 ("Listings"). *Id.*

The ALJ went on to determine that Plaintiff had the RFC to perform medium work, with the following limitations: he can perform all postural movements only occasionally; he cannot climb ladders, ropes or scaffolds; he cannot perform frequent overhead reaching; he must avoid exposure to extreme cold; he cannot operate heavy machinery or perform electrical work; and he is limited to unskilled, entry-level, routine, repetitive work involving simple instructions and one-to-two-step tasks and should work primarily with things rather than with people. ECF Dkt. #10-2 at 67.

The ALJ thereafter found that Plaintiff could not return to his past relevant work, but, based upon the RFC that she determined and the testimony of the VE, she determined that Plaintiff was able to perform jobs existing in significant numbers in the national economy, such as representative occupations of an equipment washer, doorkeeper or wire galvanizer. ECF Dkt. #10-2 at 73.

Consequently, the ALJ found that Plaintiff was not disabled. ECF Dkt. #10-2 at 74.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

-4-

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

### V.  ANALYSIS

#### A.  *DRUMMOND*

Plaintiff first asserts that the current ALJ erred in concluding that she was not bound by the prior ALJ's RFC determination because substantial evidence was lacking with which to find that medical improvement existed since the earlier decision. ECF Dkt. #13 at 583-586. Plaintiff contends that while the current ALJ found that new and material evidence existed to show medical improvement, the medical evidence did not change from 2006 and actually showed no improvement until 2009 after he received epidural injections and physical therapy. *Id*. at 585. Plaintiff asserts that even this 2009 evidence showing improvement fails to show that he was capable of medium work as found by the current ALJ. *Id*. The prior ALJ had found that he was capable of only

-5-

sedentary work and that based upon the Medical-Vocational Guidelines, Plaintiff was disabled.

The Court finds some merit to Plaintiff's *Drummond* assertion. In *Drummond*, the Sixth Circuit Court of Appeals held that the Commissioner is bound by a prior final determination concerning a claimant's entitlement to benefits absent a change in circumstances. 126 F.3d at 842, citing *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987), *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598, 600 (6th Cir. 1990) and *Senters v. Sec'y of Health & Human Servs.*, No. 90-1-5966, 1992 WL 78102 (6th Cir. Apr. 17, 1991)(per curiam). The Court held that "[t]he burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata." *Id.* at 843. In *Drummond*, the Court held that where the first ALJ to review a claim for benefits by the plaintiff had determined that her RFC was for "sedentary" work, a second ALJ's subsequent finding that she could perform "medium" work was precluded. The *Drummond* Court rejected the Commissioner's contention that the SSA has unfettered discretion to reexamine issues previously determined absent new and additional evidence. *Id.* at 842. Administrative Ruling ("AR") 98-4(6) applied *Drummond* to disability cases in the Circuit at the administrative levels. AR 98-4(6). It states in relevant part that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

*Id.*

Despite Plaintiff's assertion to the contrary and statements made by the ALJ at the hearing, the current ALJ's decision shows that she did actually apply *Drummond*. *See* ECF Dkt. #10-2 at 61, 71; ECF Dkt. #10-3 at 92. However, the Court finds that the current ALJ lacked substantial evidence with which to find that new and material evidence showed medical improvement in Plaintiff's cervical conditions from June 7, 2007 through December 17, 2007. The Court further finds that substantial evidence supports the current ALJ's finding that new and material evidence showed medical improvement as of December 18, 2007 and forward, but substantial evidence does not support the current ALJ's determination that Plaintiff could perform medium work

-6-

In finding that she was not bound by the prior ALJ's determination and in support of her medium work RFC for Plaintiff, the current ALJ indicated that "[t]he medical records related to the period in question fail to establish a basis for the presence of any cervical or lumbosacral radiculopathy related to the claimant's degenerative disc disease or disc herniation." ECF Dkt. #10-2 at 71. This is incorrect because on September 18, 2007, Dr. Peckman, Plaintiff's treating doctor at the pain clinic, reviewed Plaintiff's September 1, 2007 MRI and he assessed Plaintiff's conditions as including cervical radiculopathy at C5-6 on the right side, cervical foraminal narrowing at C5-6 and C6-7, cervical herniated disc at C5-6 and cervical facet joint osteoarthrtitis. *Id.* at 390. He discussed with Plaintiff the possibility of surgical intervention if attempts at epidural steroid injections did not help. *Id*.

The current ALJ also relied upon the fact that "Dr. McGrath, the claimant's treating source since August 2007, has not diagnosed any radiculopathy since the electromyogram" which occurred in January of 2009. ECF Dkt. #10-2 at 71. While the current ALJ may be correct as to a lack of such findings as of or after January 2009, this does not negate Dr. McGrath's findings during earlier relevant time periods which clearly show that he diagnosed radiculopathy. *See* ECF #10-13 at 441 (1/4/08 note of Dr. McGrath indicating that he felt comfortable writing script for transportation for Plaintiff which stated that Plaintiff had a "disabling condition...as cervical radiculopathy can be quite disabling for him and could be dangerous for him to even drive or operate any type of heavy machinery or do electrical work"); 443 (1/31/08 note of Dr. McGrath indicating that if Plaintiff continued to have radicular pain in neck and arm, he needed evaluated by surgeon for repair); 450 (9/6/07 referral letter from Dr. McGrath to Dr. Peckman indicating Dr. McGrath's assessment of "cervical radiculopathy on the right and myofascial pain of the neck and shoulders which is chronic in nature at this point with an acute worsening"); 453 (8/28/07 letter from Dr. McGrath to Dr. Pearce indicating Dr. McGrath's assessment of cervical radiculopathy, cervical spondylosis and myofascial pain of the neck and thoracic region). Moreover, Dr. McGrath referred Plaintiff to Dr. Peckman of the Salem Community Hospital pain clinic and he indicated the diagnosis of cervical radiculopathy at C5-6 on the right side in his letter to Dr. McGrath and in the notes accompanying each subsequent

epidural injection that he administered to Plaintiff. ECF Dkt. #10-13 at 429 (12/18/07 Clinic Report showing cervical radiculopathy among diagnoses); 431 (11/5/07 Operative Report); 432 (10/22/07 Operative Report); 433 (10/15/07 Operative Report); 434 (letter from Dr. Peckman to Dr. McGrath). Further, as indicated above, Dr. Peckman reviewed Plaintiff's September 1, 2007 MRI report and included a diagnosis of cervical radiculopathy in his assessment of Plaintiff's conditions. *Id.* at 435.

The current ALJ also relied upon the findings of an agency consulting physician who found on November 9, 2007 that new and material medical evidence existed so as to release the res judicata bar of the prior ALJ's disability determination. ECF Dkt. #10-2 at 71, citing ECF Dkt. #10-13 at 421-422. However, the findings of this agency physician merely rely upon a single progress note of Plaintiff's treating physician dated April 18, 2007 in which the treating physician found that Plaintiff had no pain over his *lumbosacral* spine area and his range of motion was quite good because he could touch his toes. ECF Dkt. #10-13 at 421. This single note and the rest of the agency reviewing physician's assessment fail to discuss Plaintiff's cervical conditions. The only other evidence relied upon by the agency reviewing physician is the assessment of the agency examining physician who found that Plaintiff's examination was essentially normal and he had no physical limitations of any kind for any type of work. *Id*. at 422.

The agency examining physician opined on October 7, 2007 that Plaintiff's September 1, 2007 MRI revealed mild degeneration without nerve impingement. ECF Dkt. #10-2 at 70. The agency examining physician found that Plaintiff's clinical examination was essentially normal and he had no limitations whatsoever for any physical activities. ECF Dkt. #10-12 at 396. The September 1, 2007 cervical MRI showed disc space narrowing at C5-6 and C6-7 with discogenic endplate changes greatest at C5-6 and bony spurring of the endplates from C5 through T1, mild facet hypertrophy at C2-3 and C3-4, mild central bulging at C4-5, but moderate bulging and bony spurring of the endplates at C5-6 with a herniated disc, mild facet hypertrophy and marked right-sided neural foraminal narrowing, although no spinal stenosis. ECF Dkt. #10-12 at 392. It also showed moderate bulging and bony spurring at the endplates of C6-7 with mild facet hypertrophy and mild right-sided neural foraminal narrowing, but no spinal stenosis. *Id.* Based upon this same MRI, Dr. Peckman had assessed Plaintiff with right-sided cervical radiculopathy at C5-6, cervical foraminal narrowing

-8-

at C5-6 and C6-7, cervical herniated disc at C5-6 and cervical facet joint osteoarthritis. *Id*. at 390. He discussed with Plaintiff the possibility of surgery, but Plaintiff wished to proceed with epidural injections. *Id*.

The Court is perplexed at the findings of the agency examining physician who concluded in October of 2007 that Plaintiff had normal examination results and no physical limitations for any level of work when less than a month earlier, Dr. McGrath, Plaintiff's treating physician, referred Plaintiff to Dr. Peckman for epidural injections in September 2007 after reviewing the same MRI results and his September 6, 2007 examination of Plaintiff and assessing "cervical radiculopathy on the right and myofascial pain of the neck and shoulders which is chronic in nature at this point with an acute worsening." ECF Dkt. #10-13 a 450-451. Dr. Peckman also found upon his review of Plaintiff's MRI and examination of Plaintiff on September 18, 2007 that Plaintiff had right-sided cervical radiculopathy at C5-6, cervical foraminal narrowing at C5-6 and C6-7, cervical herniated disc at C5-6 and cervical facet joint osteoarthritis. *Id*. at 390. He discussed with Plaintiff the possibility of surgery, but Plaintiff wished to proceed with epidural injections. *Id*. Dr. Peckman's physical examination revealed "radiating inferolateral trapezial spasm" in the paracervical region, with generalized thickening of the paracervical planes and tightening to the splenius capitis. *Id*. at 389.

For these reasons, the Court finds that the current ALJ has failed to meet her burden of showing the new and material evidence of medical improvement in Plaintiff's cervical conditions existed by which she could escape the res judicata bar of the prior ALJ's determination. The current ALJ's statement that radiculopathy was not diagnosed by Plaintiff's treating physicians is incorrect and her reliance upon the consulting and examining agency physicians' conclusions are insufficient since the reviewing physicians' reasons for departing from the prior ALJ's decision relied upon a single treating physician notation in April 2007 that concentrated on Plaintiff's lumbosacral conditions. Moreover, the current ALJ fails to discuss the treating physicians' findings and conclusions before relying upon the findings and conclusions of the agency reviewing and examining physicians.

Accordingly, the Court finds that substantial evidence does not support the current ALJ's

decision that new and material evidence of medical improvement existed from June 7, 2007 through December 17, 2007 such that she was not bound under *Drummond* to the prior ALJ's decision. Under 20 C.F.R. § 416.1563(c), Plaintiff was a "personal closely approaching advanced age" at the time of the filing of his current SSI application, and was a "person of advanced age" at the time of the current ALJ's decision. Either of these findings with the sedentary work level found by the prior ALJ which bound the current ALJ translates into a finding that Plaintiff is entitled to benefits under Medical-Vocational Rules 201.06 and/or 201.14. Therefore, the Court REVERSES the current ALJ's determination that Plaintiff was not disabled as of June 7, 2007 through December 17, 2007 and REMANDS the instant case back to the Commissioner for an AWARD of benefits for this time period.

The Court, however, limits the bar of res judicata from June 7, 2007 to only December 17, 2007 because substantial evidence supports the current ALJ's determination that new and material medical evidence existed in which to show that Plaintiff's conditions improved from December 18, 2007 forward. The current ALJ correctly recited evidence showing that upon receiving a series of epidural injections in October and November 2007, and thereafter participating in physical therapy, Plaintiff experienced significant improvement in December 2007 and on December 18, 2007, the treating physician found that Plaintiff's radicular component was stable and a January 6, 2009 MRI showed no evidence of cervical radiculopathy and no cervical nerve root irritation in the paraspinals bilaterally. ECF Dkt. #10-2 at 70; ECF Dkt. #10-13 at 429, 440, 443, 445, 447. This constitutes substantial evidence to support the current ALJ's determination of medical improvement as of December 18, 2007 such that she was not bound by the prior ALJ's determination.

Thus, the question becomes whether substantial evidence supports the current ALJ's determination of a medium work RFC for Plaintiff and her conclusion that he had the ability to perform jobs existing in significant numbers in the national economy with the RFC that the current ALJ determined as of December 18, 2007 onward. The Court finds that substantial evidence does not support the current ALJ's finding that Plaintiff can perform medium work.

The current ALJ found that Plaintiff could perform medium work, which is the ability to lift no more than 50 pounds at a time with frequent lifting and carrying of up to 25 pounds. ECF Dkt.

-10-

#10-2 at 66-71; 20 C.F.R. § 416.967(c). She added limitations of only occasional postural movements, and no climbing ladders, ropes or scaffolds, no frequent overhead reaching, no exposure to extreme cold, no operating heavy machinery or performing electrical work, and she limited him to unskilled, entry-level, routine, repetitive work with simple instructions and one to two step tasks and working primarily with things rather than people. *Id*. at 67. In determining this RFC for Plaintiff, the current ALJ relied upon the state agency medical consultant's November 9, 2007 report which was affirmed by a second consultant on March 31, 2008. *Id*. at 71. However, the November 9, 2007 opinion relied upon a single treating physician notation from April of 2007 and the state agency examining physician's findings from 2007, which are both insufficient to find that Plaintiff could perform medium work after December of 2007. And while medical evidence after December of 2007 shows an improvement in Plaintiff's symptoms, he nevertheless had limited neck range of motion with pain and diagnoses of cervical radiculopathy in early 2008, along with other indications of limitations from his cervical conditions. *See* ECF #10-13 at 441 (Dr. McGrath 1/4/08 note indicating he would write script for transportation for Plaintiff because Plaintiff had a "disabling condition...as cervical radiculopathy can be quite disabling for him and could be dangerous for him to even drive or operate any type of heavy machinery or do electrical work"); 443 (1/31/08 note of Dr. McGrath indicating that if Plaintiff continued to have radicular pain in neck and arm, he needed evaluated by surgeon for repair); 450 (9/6/07 referral letter from Dr. McGrath to Dr. Peckman indicating Dr. McGrath's assessment of "cervical radiculopathy on the right and myofascial pain of the neck and shoulders which is chronic in nature at this point with an acute worsening").

Since the agency examining and reviewing physicians' assessments upon which the current ALJ relied are limited in scope of time and appear to be the primary source of reliance for the ALJ's RFC, the Court finds that substantial evidence is lacking to support the RFC. The Court notes that the current ALJ also relied upon notations by Plaintiff's treating physicians as to positive examination findings and Plaintiff's reports of less pain and his happiness with relief provided by medications, epidural injections and physical therapy. ECF Dkt. #10-2 at 70-71. However, this does not translate into a RFC for limited medium work on a continuing basis, eight hours per day for five days per week. Moreover, while the current ALJ noted that Plaintiff's 2009 EMG showed no

-11-

evidence of cervical radiculopathy, the EMG did show moderate to severe right carpal tunnel syndrome which could impact RFC. *Id.* at 70.

With reliance upon an agency examining and reviewing physicians' opinions that precede the December 18, 2007 period relevant to her medium work determination, the Court finds that the current ALJ's medium work determination cannot stand.  While it is the ALJ who makes the ultimate determination of RFC, the ALJ's recitation of some positive clinical examination findings and Plaintiff's report of some relief of symptoms is insufficient to support her RFC. *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008) (substantial evidence did not support ALJ's RFC in case where more than relatively little physical impairment is shown on the record, and the transcript contains only diagnostic evidence and no opinion from a medical source about claimant's functional limitations, or only an outdated non-examining agency opinion).

The ALJ may indeed be correct in finding that as of December 18, 2007 and onward that Plaintiff is not disabled and can in fact perform limited medium work.  However, substantial evidence on the record does not support that finding.  The cervical MRI findings have not changed and the only physician to assess a RFC was an agency examining physician who examined Plaintiff in October of 2007.  Accordingly, the Court finds that a remand of this case is necessary so that the ALJ may reevaluate the evidence, with a proper medical source opinion.

### B.     **PLAINTIFF'S OTHER ARGUMENTS**

The Court declines to address Plaintiff's remaining assertions because the ALJ's evaluation upon remand may impact the issues relating to the treating and consulting physicians' findings and opinions, and the hypothetical question presented to the VE.  *See Reynolds v. Comm'r of Soc. Sec.,* No. 424 Fed. App'x at 411, 417 (6th Cir. 2011).

## VI.     CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ decision and REMANDS this case to the Commissioner for an AWARD of BENEFITS to Plaintiff from June 7, 2007 through December 17, 2007.  The Court further AFFIRMS the ALJ's finding of medical improvement in order to lift the res judicata bar beginning December 18, 2007, but REVERSES the ALJ's decision and REMANDS the decision for reevaluation and further analysis as to Plaintiff's cervical conditions and RFC from December 18, 2007 forward.


Date: July 3, 2012                                        */s/George J. Limbert*
                                                          GEORGE J. LIMBERT
                                                          U.S. MAGISTRATE JUDGE